NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0032n.06
Filed: January 10, 2006

No. 04-4278

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| MICHAEL L. WHITE, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: MOORE, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Michael White pled guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) after the district court denied his motion to suppress a gun recovered from a vehicle in which he was traveling. White now appeals the judgment entered on his guilty plea and the denial of his motion to suppress. For the following reasons, we affirm the district court decision.

I.

In February 1999, Michael White pled guilty to possession of cocaine, failure to comply with a police order, and carrying a concealed firearm. After serving a prison sentence, White was released on parole on June 5, 2002. In the fall of 2003, Michael Beebe, a parole officer and a member of the Violent Crimes Fugitive Task Force ("Fugitive Task Force") at the Federal Bureau

1

of Investigation's Canton, Ohio office, conducted an interview with an information source at the Stark County jail. During the course of that interview, Beebe learned from his source that White was a parole violator possibly living in the Stark County or Akron, Ohio areas and that White carried a weapon at all times. On or about November 18, 2003, the Ohio Adult Parole Authority ("OAPA") declared White to be in violation of his parole for failing to report as instructed and failing to reside at his authorized address. No significant efforts were made to locate White, however, until the spring of 2004. In the weeks leading up to April 8, 2004, Brian Allen, a Canton police officer and also a member of the Fugitive Task Force, developed information from another source linking White to an address – 2907 Daleford Avenue – in Canton, Ohio, and a white Chrysler automobile with dark tinted windows. Specifically, the source told Allen that White frequented the Daleford residence and that White was either the driver of or a frequent passenger in the Chrysler.

On April 8, 2004, a team of law enforcement officers affiliated with the Fugitive Task Force, possessing a warrant for White's arrest, went to 2907 Daleford after receiving a report that a vehicle matching the description that the source had provided was present at the residence. Upon arrival at the house, the officers observed a white Chrysler parked in the driveway, but they also noted that the Chrysler parked in the driveway did not have tinted windows. The officers then met with the homeowner, stated the purpose of their presence, and obtained permission to search the house. Although the homeowner told the officers that White had been there the day before, White was not found in the house. The officers then grouped in the front yard to discuss other leads.

While in the front yard, the officers noticed a white Chrysler with tinted windows approaching the Daleford residence. The vehicle slowed as it passed the Daleford residence. The

officers later testified that, at that point, they had no knowledge of who was in the vehicle because the Chrysler's windows were tinted. The officers then pursued the Chrysler, which eventually came to a stop.[1]

Once the Chrysler stopped, White exited the vehicle and stated something to the effect of "you got me." The officers' testimony revealed that, prior to White's exiting the vehicle, the officers were not aware of the vehicle's occupants. White was then placed under arrest. Officer Beebe ordered the driver, who was later identified as White's girlfriend Hanady Malka, to show her hands. Malka was also placed under arrest. Officer Beebe searched the passenger compartment of the Chrysler and found a HiPoint 9mm pistol in plain view behind the driver's seat. Malka informed the officers that a black bag in the Chrysler contained another handgun. The officers removed the black bag from the back seat and recovered a second firearm – a Tec-9 9mm pistol.

White was indicted on one count of possessing the Tec-9 pistol and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). Prior to trial, White moved to suppress the firearm. The

_____

[1] At the suppression hearing, the parties disagreed considerably over the course of events once the officers were in pursuit of the white Chrysler. Hanady Malka, the driver of the vehicle, testified on behalf of the defense that she neither committed any traffic violations nor attempted to evade police. Malka testified that she pulled over as soon as she saw that the officers were attempting to stop her. Officer Allen testified that the Chrysler, while not speeding, refused to stop despite the unmarked police vehicles' flashing lights and honking horns. Officer Allen also testified that Malka's vehicle ran a stop sign. The police report filed after the arrest did not mention any traffic infractions or attempt to evade police.

The events following the officers' decision to pursue the Chrysler are not relevant to our inquiry. The district court specifically stated that police had reasonable suspicion to stop the Chrysler "whether or not the [Chrysler] went through stop signs and [the police] have a [legitimate] traffic stop." The district court did not address the suggestion that the Chrysler attempted to evade police or failed to heed efforts to pull over. The district court did state that the driver of the Chrysler engaged in conduct indicating a decision "to first examine what was going on [at the Daleford residence] and then not stop." However, the district court's statement refers to not stopping at the residence, as opposed to not stopping for police.

government filed a brief in opposition to White's motion and the district court held a suppression hearing on August 2, 2004. Officers Allen and Beebe testified at the suppression hearing and Hanady Malka testified on behalf of the defense. At the conclusion of the hearing, the district court denied White's motion to suppress. That same day, White entered a guilty plea, which reserved White's right to appeal the district court's denial of his motion to suppress. White was then sentenced to 46 months in prison with credit for time served. On October 5, 2004, White filed a timely notice of appeal.

## II.

### A.

We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000); *United States v. Pollard*, 215 F.3d 643, 646 (6th Cir. 2000). On appeal, we view the evidence in the light most likely to support the district court's decision. *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994).

White contends that the stop of the Chrysler violated his Fourth Amendment rights. When law enforcement officers briefly stop a person for investigation, that stop constitutes a seizure within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). This principle applies to vehicle stops, *Delaware v. Prouse*, 440 U.S. 648, 663 (1979), and extends to the vehicle's passengers as well as its driver. *Berkemer v. McCarty*, 468 U.S. 420, 436 (1984). However, the Fourth Amendment is not violated if such a stop is based upon a reasonable and articulable suspicion that criminal activity may be afoot. *Terry*, 392 U.S. at 30.

4

We note that, while the parties correctly focus their attention on the Supreme Court's decision in *Terry*, the precise issue to be decided in this case is a slight variation on the one presented in *Terry*. Unlike in *Terry*, there was no indication in the circumstances surrounding White's arrest that would have led the Fugitive Task Force to reasonably suspect that White was engaged in criminal activity. Instead, the Fugitive Task Force suspected him of being the person for whom they had an outstanding arrest warrant. This case, therefore, presents the issue: consistent with the Fourth Amendment, under what circumstances may a law enforcement officer stop a person in order to determine whether he is the individual for whom an arrest warrant has been issued?

We recently addressed the same issue in *United States v. Hudson*, 405 F.3d 425 (6th Cir. 2005). In *Hudson*, police officers knew that there were outstanding warrants for the defendant's arrest. *Id.* at 432. The officers had been unable to locate the defendant, however, until they were provided with an anonymous tip that, along with some corroboration, indicated that the defendant's girlfriend would arrive at a particular location in a particular type of automobile at a particular time. *Id.* at 428. When a car matching the description arrived at the location at the approximate time, police officers seized its occupants before confirming that one of the occupants was in fact the defendant. *Id.* at 429. Relying on the Supreme Court's decision in *United States v. Hensley*, 469 U.S. 221 (1985), we stated that the "issue to be decided is whether the tip, [the officers'] attempts to corroborate it, and [the officers'] own knowledge of [the persons identified in the tip], are together sufficient to make out a reasonable suspicion that when the [car was located], one of the passengers was in fact [the person for whom the arrest warrant had been issued]." *Hudson*, 405 F.3d at 432.

5

We therefore ask whether the Fugitive Task Force had reasonable suspicion, based on all the facts presented to them, to believe that White was an occupant of the vehicle.

The standard of reasonable suspicion requires the facts to be "judged against an objective standard: would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action take was appropriate?" *Id.* at 21-22 (citation omitted). Finding reasonable suspicion requires assessment of the "particular circumstances" and consideration of the "rational inferences" that an officer is entitled to draw from the facts. *Id.* at 21. In short, the analysis requires a "common sense approach, as understood by those in the field of law enforcement." *United States v. Richardson*, 385 F.3d 625, 630 (6th Cir. 2004) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

An informant's tip may be sufficient to establish reasonable suspicion for a stop, even though it would be insufficient to establish probable cause, so long as the information carries sufficient "indicia of reliability." *Adams v. Williams*, 407 U.S. 143, 147 (1972); *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986). Whether an informant's tip carries sufficient indicia of reliability to justify a stop requires examination of the informant's veracity, reliability, and basis of knowledge. *Alabama v. White*, 496 U.S. 325, 328 (1990). Some informant tips may be so lacking in indicia of reliability or may be so nonspecific as to require further investigation before a stop is authorized. *See Braggs*, 23 F.3d at 1049-50. The sufficiency of an informant's tip is commonly established through some independent police corroboration of the information. *See White*, 496 U.S. at 331-32.

At the suppression hearing, the district court made the following findings of fact and conclusion of law concerning the vehicle stop:

I may choose to write an opinion, but in any event, I'm going to deny the motion to suppress. It's my view that the officers did have, viewing the totality of the circumstances, a suspicion to justify the stop, whether or not the car went through stop signs and they have a traffic stop.

The critical fact in my view is that officers had information to connect the defendant to the residence on Daleford, and also information that a white Chrysler with tinted windows is associated with that residence.

And the officers have gone to the residence, they confirm that the Chrysler in the driveway does not have tinted windows, and then per chance, here comes the white Chrysler with tinted windows which engages in conduct, the driver, whoever it is, engages in conduct which clearly indicates that a decision was made to first examine what was going on and then not stop.

And then the officers gave chase and eventually were successful in pulling the vehicle over. I think they had sufficient suspicion to justify the stop. From that point on it's clear that what transpired meets constitutional requirements.

We agree with the district court that the officers who were congregated on the Daleford residence lawn had sufficient information to reasonably suspect that White might be in the Chrysler. Officer Allen testified that he received information from a source linking White to the Daleford residence. The officers were also told that White rode in a white Chrysler with tinted windows. Indeed, the information was received from an informant who personally knew White. With an arrest warrant for White, the officers went to the Daleford residence because they were told a car matching the Chrysler's description was present there. They confirmed the car in the driveway did not have tinted windows. They searched the house with permission and did not find White, but were told that he had been there the day before, thereby corroborating half of the informant's tip. At that point, as the officers stood in the yard, they observed a white Chrysler with tinted windows drive slowly

7

through the intersection adjacent to the residence in a manner that led at least one officer to believe that it was checking out what was going on at the residence. The officers testimony revealed that, other than that vehicle, which continued on without stopping at the residence, there was little traffic in the area at the time. The officers then decided to pursue and stop the vehicle.

White challenges the district court's finding that the white Chrysler with tinted windows drove by in a manner that indicated to the officers that the occupants intended to examine what was going on and then not stop. Malka testified at the hearing that she slowed while passing the residence only to stop at a stop sign, but the district court did not find that a stop sign existed at the intersection such that a passing car would have to slow or stop. Additionally, White offers on appeal that the Chrysler may have slowed so that the driver could simply observe, as anyone would, what the congregation of men and vehicles were doing at the residence. The two testifying officers stated, however, that the Chrysler moved slowly through the intersection, giving at least one of the two officers the impression that its occupants were observing the activity at the residence. In light of Officer Allen's testimony that the car was "creeping" by the residence, which gave him the "impression . . . that somebody was watching [the officers] to see what [they] were doing," the district court's finding that the driver engaged in conduct indicating a decision to examine what was going on and then not stop was not clearly erroneous.

White does not challenge the reliability of the information, which had been provided to police, that White frequented the Daleford residence and traveled in a white tinted-window Chrysler. Indeed, White admits that the fact that White frequented the Daleford residence was corroborated when the police questioned the homeowner. Rather, White argues that the information was too

8

nonspecific to warrant a stop. We disagree. The fact that police learned from the homeowner that White had been at the Daleford residence the day before is critical to the reasonableness of their subsequent suspicion that White was in the passing vehicle. This independent police work corroborated the reliability of the information provided and confirmed to police that they were looking for a white Chrysler with tinted windows. *See United States v. Strahan*, 984 F.2d 155, 157-58 (6th Cir. 1993). In addition, the homeowner's admission that White had been there the day before meant that it was not unlikely that he would be back. When the vehicle matching the now-reliable description returned to the residence, the "investigative stop of [the] vehicle was not premised on a mere hunch, but on specific and articulable facts." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000) (finding reasonable suspicion for a vehicle stop where a vehicle matching the description given was seen in a location consistent with information provided).

White's other arguments lack merit. On appeal, White asserts that there were hundreds, if not thousands, of other vehicles in the area meeting the same description. White offers no statistical basis for the notion that hundreds or possibly thousands of similar vehicles were in the Canton, Ohio area. Even if these numbers were accurate, the key inquiry for purposes of *Terry* is the number of white Chryslers with tinted windows driving by the Daleford residence on the morning after which, as the homeowner stated, White had been at the residence. Focused on this inquiry, "common sense" would have lead a reasonable officer to suspect that White was in the Chrysler. *Richardson*, 385 F.3d at 630.

White also argues that police should have taken steps to uncover additional information before making the stop, such as identifying the occupants or running the plates. Again, we note that

9

White acknowledges that the police did corroborate the source information when the homeowner told them that White had been at the house the day before. White suggests, however, that some additional steps should have been taken to confirm that White was actually in the vehicle. "The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . ." *United States v. Sokolow*, 490 U.S. 1, 11 (1989). No additional steps were required because the officers' decision to stop the Chrysler was reasonable.

We hold that the officers, acting on the information available to them, had reasonable suspicion to stop the Chrysler. If the stop was proper, a search of the Chrysler's passenger compartment was also proper "as long as [the officers] possess an articulable and objectively reasonable belief that the suspect is potentially dangerous." *Michigan v. Long*, 463 U.S. 1032, 1051 (1983). We note that White does not contend that, even if the stop was lawful, the search of the vehicle was not. Therefore, the district court correctly decided that no Fourth Amendment violation occurred.

## B.

As an alternative basis for denying White's motion to suppress, the district court concluded that White did not have standing to challenge the search. Because we conclude that the stop was lawful, we do not reach the issue of whether White has standing to challenge the search of the car.

## III.

For the foregoing reasons, the district court decision denying White's motion to suppress the firearm is AFFIRMED.