NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0421n.06
Filed: July 16, 2008

No. 06-4574

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,                    )
                                             )     ON APPEAL FROM THE
          Plaintiff-Appellee,                )     UNITED STATES DISTRICT
                                             )     COURT FOR THE NORTHERN
          v.                                 )     DISTRICT OF OHIO
                                             )
WALTER LANIER,                               )
                                             )
          Defendant-Appellant.               )
_____     )


BEFORE: KEITH, GRIFFIN, and GIBSON, Circuit Judges.[*]

GRIFFIN, Circuit Judge.

Defendant William Lanier appeals an order of the district court denying his motion to suppress evidence seized during a protective sweep of a residence pursuant to an arrest warrant. In denying the motion, the district court found credible the unrebutted testimony of the police officers. Lanier appeals, arguing that the district court's findings of fact were clearly erroneous. Because we conclude that the district court's factual determinations were not clearly erroneous, we affirm.

I.

On the morning of July 12, 2005, a detachment of the Cleveland, Ohio Police Department's SWAT unit, accompanied by Detective Andrew Ezzo, went to the Agnes Lanier residence to execute

_____

[*]The Honorable John R. Gibson, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

a felony arrest warrant for Keith Lanier, defendant's uncle. Agnes Lanier, defendant's grandmother, informed the police officers that Keith Lanier was not there but invited them inside.

During a hearing on defendant's motion to suppress the evidence, SWAT Unit Officer Timothy Richardson testified regarding the SWAT standard procedures in executing arrest warrants under these circumstances. Officer Richardson testified that the SWAT team's role is to secure the premises. He explained that in securing a house, the SWAT team routinely handcuffs the residents and escorts them to a central location so the detective can identify them. In the event the SWAT team notices any contraband in plain view, SWAT officers inform the detective of their discovery. Once the house is secured, the detective is called inside to arrest the individual named in the warrant.

In the present case, the SWAT team entered the residence with consent and pursuant to an arrest warrant. In the execution of the arrest warrant, Officer Richardson entered an upstairs bedroom and discovered defendant Walter Lanier sleeping on a mattress and box springs that were placed directly on the floor without a bed frame. Following standard protocol, Richardson woke defendant and handcuffed him. Once defendant was handcuffed, Richardson noticed a gun in plain view protruding from defendant's pillow. Richardson also observed a "ballistic vest, personal body armor" in the corner of the bedroom.

After defendant was escorted downstairs, Richardson lifted the mattress on defendant's bed and discovered a sock containing ammunition. Richardson testified that it was "common practice" to always search under mattresses to ensure that no one was hiding underneath. He stated that a person could hide in the box spring if the springs or wood were hollowed out.

On July 26, 2005, a federal grand jury indicted defendant, charging him with one count of

being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and one count of being

a felon in possession of body armor in violation of 18 U.S.C. § 931. Thereafter, Lanier filed a pre-

trial motion to suppress his confession and the seized evidence – the firearm, ammunition, and body

armor. The district court granted the motion with regard to the confession after finding that it had

been coerced,[1] but denied suppression of the seized evidence. Lanier conditionally pleaded guilty

to being a felon in possession of a firearm and body armor, retaining his right to appeal the partial

denial of his motion to suppress.

The district court sentenced Lanier to forty months of incarceration for being a felon in

possession of a firearm, and a concurrent sentence of thirty-six months for possessing the body

armor. Defendant timely appealed.

II.

The grant or denial of a motion to suppress is a mixed question of law and fact. *United States

v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007). On appeal, we review the district court's findings of fact

for clear error but apply a de novo review to its conclusions of law. *Id*. When reviewing a district

court's denial of a motion to suppress, we must consider the evidence in the light most favorable to

the government. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (citing *United

States v. Garza*, 10 F.3d 1241, 1245 (6th Cir.1993)).

III.

_____

[1]The United States has not appealed this ruling.

As a matter of Fourth Amendment jurisprudence, "an arrest warrant is not a search warrant," *United States v. Jones*, 641 F.2d 425, 428 (6th Cir. 1981). However, the Supreme Court has held that when executing an arrest warrant, officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Maryland v. Buie*, 494 U.S. 325, 334 (1990). While allowing protective sweeps to ensure the safety of the arresting officers, the Supreme Court cautioned that such sweeps do not amount to "a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." *Id*. at 335. While conducting a protective sweep, an officer may seize contraband found in plain view if its incriminating character is immediately apparent. *Horton v. California*, 496 U.S. 128, 136 (1990) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971)).

Officer Richardson testified that he saw the firearm protruding from underneath the pillow after he woke defendant and handcuffed him. The district court noted that while there was conflicting testimony regarding whether Officer Richardson handcuffed defendant in the bedroom, or handcuffed him once he was downstairs, Officer Richardson's testimony regarding the location of the firearm was "undisputed." The district court credited Officer Richardson's testimony that he handcuffed defendant upon waking him in the upstairs bathroom, but noted that "[e]ven if the court were to disbelieve Officer Richardson and find that he did not handcuff Defendant immediately, it does not necessarily follow that the gun was not in plain view."

Defendant's objection to the district court's factual finding that the gun was in plain view is based on the credibility of Officer Richardson's testimony. Lanier's unsupported assertion that Officer Richardson's testimony was not credible does not outweigh the contrary conclusion of the district court. After applying our deferential standard of review, we hold that defendant has not demonstrated that the district court clearly erred in finding that the firearm was in plain view.

IV.

A similar analysis applies to Officer Richardson's discovery of the body armor. Officer Richardson testified that he observed the body armor located in plain view in the corner of defendant's bedroom. Defendant argued below that the body armor was not in plain view and was actually in a closet or dresser drawer. Nevertheless, while acknowledging that "such an inference is possible from the evidence," the district court found "the testimony of Officer Richardson to be credible on this issue." Defendant has not shown that the district court's decision to credit Officer Richardson's testimony was clearly erroneous. We have held that if there are two permissible views of the evidence, the district court's conclusions cannot be clearly erroneous. *Ellis*, 497 F.3d at 611-12 (quotation marks and citation omitted).

Moreover, Lanier has abandoned this argument on appeal. While defendant references the body armor in the fact section of his brief, he makes no specific arguments regarding it. Thus, defendant has waived or abandoned this argument. *See United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008) ("issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citation and quotation marks omitted).

V.

Finally, Officer Richardson testified that after he escorted defendant downstairs, he secured the room and discovered a sock containing ammunition between the mattress and the box springs. He testified that it was routine practice for SWAT members to look under mattresses and box springs when securing a room. Thus, although defendant's bed did not have a bed frame, he looked between the mattress and the box springs because there was plenty of room for someone to hide. Upon lifting the mattress, Officer Richardson discovered a sock containing ammunition.

The totality of defendant's argument in this regard consists of the following sentence:

> [T]he finding that the officers were able to view the weapon, ammunition, and body armor in plain view during the SWAT team's sweep of the Cleveland, Ohio residence in search of Keith Lanier, an adult male, by looking under a box spring and mattress set that was sitting on the floor, not a bed frame, strains belief.

An unsupported claim that the district court's conclusion "strains belief" does not establish that the district court committed clear error. With the exception of this one sentence, Lanier's brief is dedicated to challenging the reasonableness of the firearm discovery. Again, regarding the seized ammunition, defendant has waived or abandoned this suppression issue by addressing it in a perfunctory manner.

Furthermore, we note that the district court credited Officer Richardson's testimony about looking underneath the mattress and box springs as part of his protective sweep.

> While it is logical to question whether or not there is a substantial probability that one would be hiding under a box spring lying on the floor, Officer Richardson testified that such a procedure is "common practice," and that there is "plenty of room" for someone to hide under a box spring.

We have held that it is reasonable to search closets and under beds to ensure that no one was hiding there. *United States v. Bass*, 315 F.3d 561, 564 (6th Cir. 2002). However, the circumstances of *Bass* are arguably distinguishable because the bed in *Bass* had a frame. Nonetheless, at least one federal district court has concluded that it is reasonable to look under a mattress and bed springs even though the bed lacked a frame. *See United States v. Chambers*, 228 F. Supp. 2d 474, 479 (D. Del. 2002) (allowing a search under a mattress and box springs that were lying directly on the floor). In the present case, the district court concluded that "in light of Officer Richardson's testimony and *Chambers*, the court finds that the police did not exceed the parameters of a protective sweep when they looked under the bed for a fugitive and found the ammunition." We agree.

VI.

For the reasons stated above, we affirm the order and judgment of the district court.