NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0553n.06

No. 07-4163

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 11, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Southern |
| | ) | District of Ohio |
| DANTE DAVIS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:     BOGGS, Chief Judge; BATCHELDER and COOK, Circuit Judges.

PER CURIAM.  Dante Davis appeals the denial of his motion to suppress a gun found in his car.  We affirm the judgment of the district court because the police reasonably, though erroneously, suspected that Davis was an armed fugitive, and therefore they were constitutionally permitted to detain him and search his car for weapons.

I

On December 13, 2006, the Cincinnati police sought a search warrant for a building at 7979 Reading Road based on information that Calvin Ruffin, an armed and dangerous fugitive with multiple outstanding felony arrest warrants, frequented the building and would be there that night.  While the request for the warrant was pending, the police watched the building using several unmarked cars.  To help them identify Ruffin, the surveillance team was given a black-

and-white copy of his picture and told that he was "five-nine, 170, 180 pounds, male black, black hair, brown eyes," with a "darker complexion."

Around 9 p.m., a black GMC Yukon SUV with darkly tinted windows arrived. The driver, a black male matching Ruffin's description, got out of the Yukon and hurried into the building. Several minutes later, he came back out and drove off. An unmarked car driven by officers Deon Mack and Phil Hermann followed him.

After speeding through a residential neighborhood for approximately half a mile, the Yukon pulled into an apartment complex's parking lot. The driver got out of the Yukon, leaving the door open, and began walking to the front of the vehicle. Suspecting that the driver was Ruffin, Mack and Hermann decided to make a "high-risk stop." Leaving their car on the street, the officers approached the driver with their weapons drawn, yelling "Cincinnati Police, stop!" and ordering the driver to get down on the ground. He complied.

While Hermann provided cover, Mack handcuffed the driver, frisked him, and informed him that he was being detained. The officers were unable to determine if anyone else was in the Yukon because of the darkly tinted windows, so Mack pulled the driver to his feet and backed him away from the SUV. Hermann took control of the driver, and Mack walked around the Yukon with his gun drawn so that he could look through the windshield and see if anyone else was in the car. Mack saw no one, so he went back to the open driver's-side door and, looking in, saw a handgun in the console's cupholder.

Mack walked back to the driver and informed him that he was under arrest. The officers then thoroughly searched him and discovered that he was not Ruffin; his identification listed his name as Dante Davis, and he confirmed this when questioned.

Davis was charged in federal court with one count of being a felon in possession of a firearm and one count of possessing a stolen firearm. Davis moved to suppress the gun, but the district court refused, concluding that the officers acted constitutionally because they reasonably suspected that it was the wanted fugitive Ruffin who was driving the Yukon. Davis subsequently agreed to a plea bargain, according to which he pled guilty to the felon-in-possession charge but reserved his right to appeal the denial of his suppression motion. Davis now exercises that right.

II

Davis contends that the gun should be suppressed because Mack and Hermann found it after unconstitutionally seizing him and searching his car. We review this legal claim de novo. *See United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008). In doing so, we accept the district court's factual findings unless they are clearly erroneous, and, in the absence of express findings, we view the evidence in the light most favorable to the district court's decision. *See United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc).

We conclude that Mack and Hermann did not violate Davis's Fourth Amendment rights, and therefore there is no reason to suppress the gun. The officers were constitutionally permitted to detain Davis because they reasonably suspected that he was Ruffin, and thus that he was "wanted in connection with a completed felony." *United States v. Hensley*, 469 U.S. 221, 229 (1985); *see also Terry v. Ohio*, 392 U.S. 1 (1968). That their suspicion was wrong does not

affect our evaluation of whether it was reasonable. *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 813 (6th Cir. 1999).

At the time they decided to make the stop, Mack and Hermann knew that the driver matched Ruffin's description and that he had entered a building associated with Ruffin on a night Ruffin was supposed to be there. Taken individually, none of these facts are probative enough to support reasonable suspicion. However, the class of individuals satisfying *all* of these criteria is small enough to render the officers' suspicion reasonable.[1] *See United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (explaining that the confluence of multiple vague or innocent facts can give rise to reasonable suspicion); *compare United States v. Babb*, 77 F. App'x 761, 766–67 (6th Cir. 2003) (per curiam) ("Here, a black male of a certain age and size, driving a silver or grey Oldsmobile Alero with blue and white Michigan plates[, in Michigan,] creates a sufficiently narrow class of suspects."), *and United States v. White*, 162 F. App'x 520, 524 (6th Cir. 2006) (holding that the police had reasonable suspicion for a stop based on information that a fugitive was at a particular address and driving a "white Chrysler with tinted windows," and such a car drove by the address), *with United States v. Powell*, 210 F.3d 373 (table), 2000 WL 357262, at *3 (6th Cir. Mar. 29, 2000) (concluding that the description, "a black man in a black car," does not sufficiently "winnow the class of potential suspects").

---

[1] We reject the government's proposed alternative justifications for the stop. The government contends that the stop was constitutional because the officers reasonably suspected that Ruffin was a passenger in the Yukon, but no articulable facts support this theory. The government also notes that the Yukon violated traffic laws and that the officers were informed by the dispatcher that some type of warrant was attached to the Yukon, each of which would have justified a stop. We do not consider these facts because neither would justify the officers' use of force or search of the Yukon. Furthermore, the officers testified that they based the stop on their suspicion that Ruffin was driving the Yukon, and neither fact linked Ruffin to the Yukon.

This reasonable suspicion allowed the officers to conduct a protective search of the Yukon because they knew Ruffin was likely armed and the driver could have accessed a weapon in the Yukon during the stop. *See Michigan v. Long*, 463 U.S. 1032, 1049–51 (1983) ("[A] vehicle search incident to detention] is permissible if the police officer possesses a reasonable belief . . . that the suspect is dangerous and the suspect may gain immediate control of weapons."). That Davis was handcuffed and under the supervision of an officer several feet away from the Yukon does not invalidate the search because he might have "br[oken] away from police control and retrieve[d] a weapon from his automobile," *id.* at 1051–52.[2] Additionally, because the officers could not tell if anyone else was in the Yukon, they were entitled to conduct a protective sweep of the SUV's interior, in which case the gun would have been in plain view.

Davis challenges neither the reasonableness of the officers' initial suspicion that he was Ruffin nor the legality of the search so long as that suspicion remained reasonable. Instead, he claims that the officers learned his true identity before they searched the Yukon, and thus that they had no reason to believe that they were dealing with an armed and dangerous individual. But Mack testified that neither he nor Hermann learned Davis's true identity until after they had

---

[2] Davis does not argue that the Supreme Court's recent decision in *Arizona v. Gant*, 129 S. Ct. 1710 (2009), affects our analysis, and we conclude that it does not. *Gant* invalidated a protective vehicle search incident to arrest where the defendant had already been locked in the back seat of a squad car, explaining that the police "could not reasonably have believed . . . that Gant could have [escaped from the back of the squad car and] accessed his car at the time of the search." *Id.* at 1719. As the Court noted, this ruling overturned the previously accepted scope of protective vehicle searches incident to arrest. *Id.* at 1718. Even assuming that *Gant*'s restrictive reasoning applies to protective searches incident to investigative detentions—a matter we need not decide here—Mack's search was permissible. In *Gant*, the defendant was in the back seat of a squad car, and thus there was no reasonable possibility that he could "break away from police control" and access his car. In contrast, Davis was being restrained by an officer a few feet from the Yukon; under such circumstances, we think the officers could "reasonably have believed . . . that [Davis] could have [escaped from their control and] accessed his car at the time of the search."

found the gun, and the district court credited this testimony. This finding is not clearly erroneous, and therefore we reject Davis's claim.[3]

At oral argument, Davis also argued that, by displaying their weapons and handcuffing him, the officers transformed the permissible investigative detention into an illegal arrest unsupported by probable cause. Davis "waived or abandoned" this argument by failing to adequately present it in his brief. *United States v. Lanier*, 285 F. App'x 239, 241–42 (6th Cir. 2008). Nonetheless, we note that the officers' use of force did not exceed the scope of the detention because it was reasonable under the circumstances: Mack and Hermann believed that they were stopping an armed and dangerous fugitive, and they did not know if any of the fugitive's companions were in the Yukon. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 309 (6th Cir. 2005) ("During [investigatory detentions], officers may draw their weapons or use handcuffs so long as circumstances warrant that precaution" (internal quotation marks omitted)).

III

---

[3] For ease of analysis, we have joined the parties and the district court in assuming that the gun was found pursuant to a search of the Yukon. But even if the officers were not permitted to search the Yukon, the gun's discovery was constitutional under two alternative theories. First, because of this case's procedural posture, we accept Mack's testimony that he saw the gun through the Yukon's open door, *see Carter*, 378 F.3d at 587, and thus the gun was in plain view, *see United States v. Campbell*, 549 F.3d 364, 373 (6th Cir. 2008). Second, because the officers could not be certain that no one was hiding in the Yukon because of its darkly tinted windows, they were entitled to conduct a protective sweep of the interior to find any other passengers. *See Maryland v. Buie*, 494 U.S. 325, 334 (1990) ("[A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest [in the defendant's house] from which an attack could be immediately launched."). During such a sweep, the gun would have been in plain view.

Mack and Hermann did not violate Davis's Fourth Amendment rights because they reasonably, though erroneously, suspected that he was the armed fugitive Ruffin. Therefore, there is no reason to suppress the gun, and we AFFIRM the district court's judgment.