NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0072n.06

No. 23-5258

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 21, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| COREY STEPHENS, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: GRIFFIN, BUSH, and READLER, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Corey Stephens contends that law enforcement violated his rights under the Fourth Amendment when officers searched his vehicle and seized his cell phone. The district court held that although the search warrant did not expressly include Stephens' vehicle, an exception to the warrant requirement applies such that the search of Stephens' vehicle and the seizure of his cell phone comport with the Fourth Amendment. For the reasons that follow, we AFFIRM.

**I.**

On the morning of May 20, 2021, Stephens finished his night shift at work and drove home. Law enforcement followed and, when he pulled into his driveway, officers parked behind him. The officers arrived bearing a federal search warrant. They obtained it because, four days earlier, in an online chat, Stephens posted an image of him sexually abusing his toddler son. Homeland Security officers traced the chat to Stephens' cell phone, and Special Agent Derek Curtis applied

for a federal search warrant to recover the phone, among other things, based on probable cause that Stephens produced with intent to distribute, transported, and possessed child pornography in violation of 18 U.S.C. § 2252A.

When Officer Brad Harper approached Stephens' vehicle to execute the warrant, he observed Stephens making a "furtive movement" that suggested he was "hiding something." R. 45 at PageID 246, 262. In particular, before Stephens exited his vehicle, Officer Harper saw Stephens make a "tucking" movement that caused him to think Stephens may be armed. *Id.* at PageID 262. So, once Stephens was out of the vehicle, officers searched it for weapons. They found a firearm, cell phone, and smart watch.

According to Officer Harper, the officers did not immediately seize the phone because the "search warrant hadn't been read," so it was unclear whether Stephens "was going to be arrested or not at the time." *Id.* at PageID 258. But after the officers executed the search warrant of Stephens' home, they applied for an arrest warrant and arrested Stephens.

At some point, Stephens was detained in a police cruiser. There, he told Agent Curtis his phone's password and revealed an encrypted folder on his device—information that the police did not previously possess. Stephens also agreed to abandon his cell phone and signed a property abandonment form.

On January 7, 2022, Stephens filed a motion to suppress all physical and testimonial evidence obtained from the search of his vehicle. Specifically, Stephens sought to suppress the smart watch and cell phone that were seized. He also sought to suppress any statements that he made to law enforcement during and following the search of his vehicle under the fruit-of-the-poisonous-tree doctrine.

-2-

The district court denied Stephens' motion to suppress as it related to the seizure of the cell phone and statements made to law enforcement during and following the search of his vehicle. But it granted Stephens' motion as to the seizure of the smart watch because the government did not justify its seizure of the smart watch in its briefing. This appeal followed.

## II.

Stephens contends on appeal that the seizure of his cell phone violates the Fourth Amendment. We review this legal claim de novo. *See United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008). In doing so, we accept the district court's factual findings unless they are clearly erroneous, and, in the absence of express findings, we view the evidence in the light most favorable to the district court's decision. *See United States v. Carter*, 378 F.3d 584, 587–89 (6th Cir. 2004) (en banc); *United States v. Collazo*, 818 F.3d 247, 253 (6th Cir. 2016).

## III.

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Stephens contends that the search of his vehicle violated the Fourth Amendment and that, because that search led to the discovery of his cell phone, the seizure of his phone also violated the Fourth Amendment. Appellant Br. at 7–8. When faced with a Fourth Amendment challenge, we typically look to the text of the warrant to determine whether it authorized the search in question. *See United States v. Durk*, 149 F.3d 464, 465–66 (6th Cir. 1998). If it did not, we must then analyze whether an exception to the Fourth Amendment's warrant requirement covers the search. *See id.*

Here, the government does not argue that the search was within the warrant's scope; rather, it argues only that an exception to the warrant requirement applies. We agree that, regardless of the warrant's scope, an exception to the warrant requirement applies such that the search of Stephens' vehicle was lawful. In particular, we hold that police conducted a lawful protective sweep of Stephens' vehicle, and thus the officer was legally present inside the vehicle when he seized the cell phone, which was in plain view.

## A. Lawful Protective Sweep

The Supreme Court has held that in some circumstances, officers who reasonably suspect that an individual is armed and dangerous may conduct a search of the suspect's vehicle:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). In determining whether reasonable suspicion exists, courts employ a "totality of the circumstances" analysis. *United States v. Graham*, 483 F.3d 431, 438 (6th Cir. 2007). In other words, courts "must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *Id.* (quoting *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001)).

Thus, the first question we must answer is whether the facts here give rise to a reasonable suspicion that Stephens was armed and dangerous, such that law enforcement could search his vehicle for weapons after first encountering Stephens. *Graham*, 483 F.3d at 438–40.

The totality of the circumstances are as follows: (1) Stephens was a suspected felon—specifically for sexually abusing his toddler son, (2) officers were following Stephens to his home to execute a search warrant of his residence, and (3) upon approaching Stephens' vehicle, Officer Harper saw Stephens make a "tucking" movement that caused him to suspect that Stephens had a firearm in the vehicle. *See* R. 45, PageID 262 ("Because he was doing a furtive movement by tucking, and so the first thing I thought was a firearm.").

This court has routinely held that "furtive movements that cause[] officers to fear for their safety," *United States v. Mays*, 643 F.3d 537, 542–43 (6th Cir. 2011), in addition to some other circumstance (for example, the stop occurring in a high crime area or a tip as to more dangerous conduct) are sufficient to establish reasonable suspicion. *See, e.g.*, *United States v. Bah*, 794 F.3d 617, 621–22 & nn.1–2, 627 (6th Cir. 2015) (extensive furtive movements that led officer to call for backup); *United States v. Tillman*, 543 F. App'x 557, 558–59, 562–63 (6th Cir. 2013) (furtive movements plus nervousness and failure to follow officer's instructions); *United States v. Lurry*, 483 F. App'x 252, 254 (6th Cir. 2012) (furtive movements plus the presence of gun shells).

Among the other circumstances that can give rise to reasonable suspicion that a suspect is armed and dangerous is if police believe the suspect recently committed a serious and dangerous felony. *See United States v. McMullin*, 739 F.3d 943, 946–47 (6th Cir. 2014) (suspicion that suspect was involved in breaking-and-entering or burglary "raise[d] sufficient suspicion that the suspect may be armed and dangerous"); *United States v. Keeling*, 783 F. App'x 517, 525 (6th Cir. 2019) (explaining that it was reasonable for the officers to infer that the defendant, a known felon, "might be reaching for a gun when he moved his right hand down" and was therefore proper to conduct a protective frisk); *United States v. Bradley*, 912 F.2d 466 (6th Cir. 1990) (unpublished table opinion) ("It was reasonable for the officer to believe that appellant, who was suspected of

having recently been involved in a car theft, might have been armed and dangerous."); *cf. United States v. See*, 574 F.3d 309, 314 (6th Cir. 2009) (determining that officers did not have reasonable suspicion because at the time they "did *not* suspect the men of a specific crime" and "had not seen the men do anything suspicious" (emphasis added)). Further, police's concern for safety is heightened during "the dangerous and difficult process of . . . executing search warrants" to search for evidence of those serious and dangerous felonies. *See Maryland v. Garrison*, 480 U.S. 79, 87 (1987).

Here, the totality of the circumstances supported Officer Harper's reasonable suspicion that Stephens was armed and dangerous. As evidenced by the warrant, police already had probable cause to suspect that Stephens had committed a serious and dangerous felony—producing child pornography by exploiting his toddler son. Officers were confronting Stephens at his home to search for evidence of that felony. And, upon approaching Stephens' vehicle, Officer Harper observed a "tucking" motion that suggested that Stephens may be hiding a gun. Accordingly, Officer Harper's protective sweep of the vehicle was lawful.

Stephens resists this conclusion, citing *United States v. McCraney*, 674 F.3d 614 (6th Cir. 2012). But *McCraney* involved a suspect's furtive movements during a minor traffic violation—a failure to dim headlights—not furtive movements just before officers were to execute a warrant-supported search of a suspected felon's home. *Id.* at 621 (citing *Graham*, 483 F.3d at 436 ("It is hard to imagine how suspicion of a parking violation, by itself, could ever justify a protective search of a suspect's person.")). These additional circumstances beyond Stephens' furtive movement substantiate a finding of reasonable suspicion. *Cf. McCraney*, 39 F.4th at 621; *see also United States v. Cochran*, 939 F.2d 337, 339 (6th Cir. 1991) (police officers stopped a suspect in his vehicle before executing a search warrant of his residence; during that stop, an "officer searched

the glove compartment when defendant was observed moving his right arm quickly while being ordered from the car. This search was reasonable under the circumstances." (citing *Long*, 463 U.S. at 1049)).

Moreover, the fact that Stephens may have been detained in the police cruiser at the time of the protective sweep does not change our analysis. The Supreme Court held in *Long* that the police may conduct a protective sweep of a vehicle even if a suspect is temporarily under police control because the suspect may still have eventual access to weapons inside the vehicle. 463 U.S. at 1051–52. For instance, the suspect could "break away from police control and retrieve a weapon from his automobile." *Id.* at 1051. Or the police might not place the suspect under arrest, thus permitting him to reenter his vehicle where "he will then have access to any weapons inside." *Id.* at 1052. This court has followed that same reasoning. For example, in *United States v. Graham*, we determined that even though the suspect "was cuffed and secured in the back of the cruiser, with five to seven officers guarding him," officers were permitted to sweep the suspect's vehicle for weapons given that he was detained but not under arrest. 483 F.3d at 440; *see also United States v. Davis*, 341 F. App'x 139, 141 (6th Cir. 2009) ("That Davis was handcuffed and under the supervision of an officer several feet away from the Yukon does not invalidate the search[.]"); *United States v. Terrell*, 95 F. App'x 746, 748 (6th Cir. 2004) (citing *Long* to reject Terrell's argument that the search was invalid because he sat in the back of the police car when officers found a gun in his vehicle).

True, *Long* does not apply if the suspect is under arrest. That is because when a person is under arrest, rather than just detained, the possibility of the suspect returning to the vehicle and retrieving a weapon is removed. *See Arizona v. Gant*, 556 U.S. 332, 352 (2009) (Scalia, J., concurring). But here, Stephens was not under arrest at the time of the protective sweep.

The precise time at which an arrest occurs is a factual finding. *Sibron v. New York*, 392 U.S. 40, 67 (1968) ("It is a question of fact precisely when, in each case, the arrest took place."); *see also Rios v. United States*, 364 U.S. 253, 262 (1960) ("The validity of the search thus turns upon the narrow question of when the arrest occurred, and the answer to that question depends upon an evaluation of the conflicting testimony of those who were there that night."). Under the relevant standard of review, we must accept the district court's factual findings unless they are clearly erroneous, and, in the absence of express findings, we view the evidence in the light most favorable to the district court's decision. *See Carter*, 378 F.3d at 587–89; *Collazo*, 818 F.3d at 253. And here, given that there are "two permissible views of the evidence" as to when Stephens was arrested, the district court's finding is not clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).[1]

The district court impliedly found that Stephens was not under arrest at the time of the protective sweep. It explained that Stephens' vehicle was searched for weapons "while he was being questioned." R. 48 at PageID 294. In the next sentence, the district court carefully stated that *Long* applies "if the suspect is not placed under arrest" because he could "be permitted to reenter his automobile" and he would then have "access to any weapons inside." *Id.* (quoting *Long*, 463 U.S. at 1051–52). These statements suggest that the district court understood the search to be contemporaneous with when Stephens first entered the police car and prior to any facts suggestive of an arrest. Record evidence supports the district court's findings as to when Stephens was arrested. First, officers saw the phone *after* they searched Stephens' vehicle, but did not seize it immediately because they were not "sure if [Stephens] was going to be arrested or not at the

---

[1] Moreover, Stephens did not argue that the district court's determination as to the timing of his arrest was clearly erroneous in his briefing to this court; therefore, the issue is forfeited. *United States v. Burke*, 345 F.3d 416, 424 (6th Cir. 2003).

time." *See* R. 45 at PageID 258. Second, the arrest warrant for Stephens was not obtained until *after* the search warrant was executed, and the search warrant was not executed until after officers had already searched the vehicle and found the phone.

In other words, the evidence supports the district court's determination that Stephens was not yet arrested when officers searched his vehicle. Therefore, it is a reasonable view of the evidence, as the district court found, that Stephens was not arrested at the time of the protective sweep. And in that case, *Long* applies.

Relatedly, Stephens argues that the search of his vehicle was unlawful because the officers would not have allowed him access to the vehicle at the time of the search. However, the testimony Stephens cites in support of this claim was taken out of context. *See* Appellant Br. at 18. Agent Curtis testified that officers would not have allowed Stephens to go back to his vehicle because they "knew there was a gun there." R. 45 at PageID 253; *see also id.* at 237 ("Q. Okay. Had he wanted to get back in there, would you-all have let him get back into that cab? A. No. There was a gun present."). Therefore, Agent Curtis' full testimony demonstrates that Stephens was prevented from returning to his vehicle because the search had already occurred and officers had found a weapon. That is different than suggesting that the search was unconstitutional because Stephens would not have had access to the vehicle *at the time* of the search.

In sum, "because a full custodial arrest had not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger," Officer Harper conducted a lawful protective sweep of Stephens' vehicle. *Long*, 463 U.S. at 1052 (cleaned up).

**B.     Plain-View Exception to the Warrant Requirement**

Because the protective sweep of Stephens' vehicle was lawful, the government's seizure of Stephens' cell phone, which was otherwise in plain view, was also lawful. The plain-view

doctrine permits an officer to make a warrantless seizure of incriminating items that an officer comes upon while otherwise engaged in a lawful search. *Horton v. California*, 496 U.S. 128, 134–35 (1990). The four requirements of the plain-view doctrine are that: "(1) the item seized must be in plain view, (2) the item's incriminating character must be immediately apparent, (3) the officer must lawfully be in the place from where the item can be plainly seen, and (4) the officer must have a lawful right of access to the item." *United States v. Loines*, 56 F.4th 1099, 1106 (6th Cir. 2023) (citing *Horton*, 496 U.S. at 136–37). Stephens contests the third and fourth elements. Appellant Br. at 12–26.

As to the third element, we must consider whether the officers were "lawfully in a position from which" to view the phone. *United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011). Having determined that the officers had reasonable suspicion to conduct a protective sweep of the vehicle for weapons, we therefore hold that the officers were lawfully in a position from which to view the phone.

For the fourth element, we must determine whether the phone was observed while the officers confined their activities to the permissible scope of a protective search of the vehicle for weapons. That is, because a protective sweep of a suspect's vehicle to search for weapons is "constrained to places where a weapon may be hidden," *Graham*, 483 F.3d at 440, the phone must have been found in plain view in an area limited to such a search. Officer Harper saw the phone "in the crack area" between the seat and the center console. R. 45 at PageID 258. That is an area where a weapon may be hidden. *See, e.g.*, *United States v. Morrison*, 594 F.3d 543, 544 (6th Cir. 2010) (explaining that "an officer discovered a firearm between the driver's seat and the center console of the vehicle that the defendant had been driving"). Indeed, the officers found the gun in

the same place as the cell phone. Thus, the phone's location was within the permissible scope of the protective search.

Accordingly, the government's seizure of Stephens' cell phone does not violate the Fourth Amendment. The police lawfully entered Stephens' vehicle to search for weapons after observing Stephens, a suspected felon whose home they were authorized to search, make furtive movements before exiting the vehicle. During that lawful search, the officers could plainly see Stephens' phone.[2]

## IV.

For the foregoing reasons, we **AFFIRM**.

---

[2] Because we hold that the search of the truck and seizure of the phone was permissible under the Fourth Amendment, we need not reach Stephens' "fruit of the poisonous tree" argument. *Pearce*, 531 F.3d at 383 n.2.