*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0244p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                     *Plaintiff-Appellee,*

v.                                                          No. 09-6461

LANERRICK GERROD JOHNSON,
                     *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 08-00202-001—Aleta Arthur Trauger, District Judge.

Argued: March 2, 2011

Decided and Filed: August 29, 2011

Before: BATCHELDER, Chief Judge; BOGGS and WHITE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Anne-Marie Moyes, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Darryl A. Stewart, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Anne-Marie Moyes, Jude Lenahan, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Darryl A. Stewart, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

**OPINION**

_____

ALICE M. BATCHELDER, Chief Judge. Defendant-Appellant Lanerrick Johnson was charged with several counts of possessing counterfeit securities and fraudulent identification documents. The district court denied his motion to suppress evidence obtained during a residential search. He pled guilty on all counts and was

1

sentenced to 45 months in prison.  He now appeals the district court's denial of his motion to suppress.  Because the evidence was fruit of an unreasonable search, we REVERSE.

**I.**

On October 30, 2007, four law enforcement officers conducted a "knock and talk" at 220 Benefield Avenue ("the residence") in Smyrna, Tennessee.  They went to the residence to investigate a tip that they received from an anonymous caller indicating that residents at the address possessed marijuana and a firearm.  At the time of the knock and talk, the home was owned by Angela Rawls, who is the Defendant's mother-in-law.  Rawls lived in the home with her mother, Maudie Conerly, and her daughter, Karen Johnson (the Defendant's wife) ("Karen"), along with several children.  Although the Defendant and Karen had been separated for some time, he had been staying with her intermittently at the residence since May 2007.

When the officers knocked, Conerly answered the door.  The officers explained the purpose of their visit and told her that they would like to search the house.  When they asked who else was home, Conerly said that Karen was in the back bedroom with her husband (the Defendant), and that Rawls was sick in her bed.  Karen and the Defendant emerged from the bedroom and came into the living room.  The police asked who lived at the residence, and it is undisputed that Conerly and Karen indicated that they lived there.  The Defendant's response is disputed.

According to the Defendant, he told the police that he, too, lived at the residence. He further claims that he expressly objected to a search. The police officers testified that the Defendant stated that he did *not* live at the residence, but that he "came and went" freely to visit his children.  They further testified that he did not object to a search.  Two of the officers took Conerly and Karen outside and obtained formal consent forms from them authorizing a search of the home.  The Defendant claims that he again objected to the search when everyone came back inside.  The police maintain that he never objected.

Before the police started their search, Karen voluntarily turned over a small amount of marijuana from her dresser drawer. Detective Weaver then began to search the bedroom that Karen shared with the Defendant. In the bedroom, Weaver found a handgun, counterfeit money, 100 grams of marijuana, digital scales, computer equipment, and some media storage devices, all of which belonged to the Defendant.

On September 17, 2008, a grand jury returned a seven-count indictment charging the Defendant with possessing counterfeit securities, producing and possessing false identification documents, and aggravated identity theft. The Defendant moved to suppress the evidence found during the search of the residence, and the district court denied his motion after an evidentiary hearing. He pled guilty to all seven counts of the indictment, but his plea agreement preserved his right to appeal the denial of his motion to suppress. The district court sentenced the Defendant to 21 months in prison on counts one through six and a mandatory consecutive 24 months in prison on count seven.

The Defendant filed this timely appeal in which he challenges the district court's denial of his motion to suppress.

## II.

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Gross*, 624 F.3d 309, 314 (6th Cir. 2010) (internal quotation marks omitted). We construe the evidence in the light most favorable to the government. *Id.*

The district court determined that the Defendant objected to the search before the police searched the bedroom. However, the court held that his objection was invalid because the Defendant was not a full-time resident of the home and his possessory interest was therefore inferior to that of Karen and Conerly, who lived there full-time. On appeal, the Defendant argues that the district court misapplied the law when it determined that his objection was invalid.

**A.**

The Fourth Amendment prohibits unreasonable searches and seizures. A search conducted without a warrant is unreasonable unless it falls within an exception to the warrant requirement. *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007). One such exception is voluntary consent from an individual possessing authority. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006). That person may be the one against whom evidence is sought, or it may be a co-occupant who shares common authority over the premises. *Id.* "[T]he exception for consent extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." *Id.* (citation omitted). However, in situations where one co-tenant consents to a search but another, physically present co-tenant expressly refuses consent, a warrantless search is not reasonable as to the objecting co-tenant. *Id.* at 120.

In *Randolph*, the defendant's wife called the police and complained that her husband had taken their son away after a domestic dispute. *Id.* at 107. When the police arrived, she also told them that her husband was using drugs, that his drug use had caused marital problems, and that she had just recently returned to the home after an absence of several weeks. *Id.* The husband arrived a little later, and the police asked for his consent to search the house, which he denied. *Id.* They then asked the wife for consent, which she gave, and they searched the home. *Id.* The Supreme Court held that the search was unreasonable as to the husband because "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Id.* at 122-23. The Court explained its holding by reference to commonly held social understandings that one co-tenant generally does not have authority over another. *See id.* at 113-14 ("[T]here is no common understanding that one co-tenant generally has a right or authority to prevail over the express wishes of another, whether the issue is the color of the curtains or invitations to outsiders.").

**B.**

The district court interpreted this court's decision in *Ayoub*, 498 F.3d 532, as "drawing a distinction [after *Randolph*] between superior possessory and privacy interest[s] and lesser possessory and privacy interests." The district court stated that, "if one has a lesser privacy interest, then even the presence and active objection to a search by that person with a lesser possessory interest is not a problem if [the police] have received consent to search from an individual with a superior possessory and privacy interest." However, we have drawn no such distinctions.

In *Ayoub*, 498 F.3d at 536, the police received a tip that the defendant was engaged in drug activity at his parents' home. While the defendant's parents were out of the country, police obtained consent to search from his half-sister. *Id.* She lived nearby, had a key to the home, and was taking care of it while the parents were away. *Id.* The police did not seek consent from the defendant, even though they had observed him coming and going from the home. *Id.* We held that the defendant's half-sister had authority to consent to the search and that, even if he had a superior possessory interest in the home, he "never cut off [his half-sister's] authority to consent to the search." *Id.* at 538-40.

The district court misconstrued *Ayoub*. *Ayoub* does say that someone with a lesser possessory interest can consent to a search when a person with a greater possessory interest is not present to refuse consent. *Id.* at 540-41. Further, *Ayoub* and other cases have affirmed the proposition that someone with a lesser possessory interest cannot consent to a search over the express objection of someone with a greater possessory interest. *See id.* at 538-39 ("When the primary occupant has denied permission to enter and conduct a search, his employee does not have the authority to override that denial." (internal quotation marks and citation omitted)). This rule essentially accords with *Randolph*. *Ayoub* does not, however, say anything about the relevant question in this case, which is whether consent to search from someone with a superior possessory interest invalidates an objection to a search from someone present with a lesser possessory interest, rendering the search reasonable as to the objector.

There is no precedent addressing the question of whether *Randolph*'s holding requires residential co-tenants to have equal possessory interests. However, *Randolph* itself suggests that the Court is not concerned with such distinctions. First, the Court noted that its holding applies to all "residential co-occupancies," notwithstanding the reality that the term may encompass a "multiplicity of living arrangements." *Randolph*, 547 U.S. at 109 n.2. The Court described the husband and wife in *Randolph* as co-occupants, even though the husband had been living at the home continuously, while the wife had only been there for a few days (and may not have intended to stay there). *See id.* at 106-07. If the Court was concerned with relative degrees of possessory interest among residential co-occupants, then the facts in *Randolph* certainly presented an opportunity to draw such distinctions. But the Court expressly avoided making those distinctions, stating that, "Unless the people living together fall within some recognized hierarchy, like a household of parent and child or barracks housing military personnel of different grades, there is no societal understanding of superior and inferior . . . ." *Id.* at 114. And finally, the Court reached its holding by reference to general Fourth Amendment jurisprudence, in which the authority for "third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes." *Id.* at 110.

## C.

In this case, there is no serious dispute that the Defendant had a reasonable expectation of privacy in the bedroom, which he shared with his wife and which he used to store personal belongings. *See Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990). The district court found that the Defendant was present when the police arrived and that he expressly objected to the search. Accordingly, the search of the bedroom was unreasonable as to the Defendant. *See Randolph*, 547 U.S. at 120. Further, *Randolph* does not distinguish among the "multiplicity of living arrangements," *id.* at 109 n.2, and this particular arrangement of adult co-occupants—a grandmother-in-law, mother-in-law, wife, and husband—does not fall within any "recognized hierarchy," *see id.* at 114.

Johnson's express objection to the search was sufficient to render the search of the bedroom unreasonable as to him, notwithstanding the consent given by Karen and Conerly. *See id.* at 122-23.

### III.

For the foregoing reasons, we **REVERSE** the decision of the district court denying the Defendant's motion to suppress.