RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

JOSEPH MCMULLIN,

        *Defendant-Appellant.*

No. 12-2300

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cr-20345-1—Julian A. Cook, Jr., District Judge.

Decided and Filed: January 21, 2014

Before: COLE and CLAY, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Cullen C. Gault, Lexington, Kentucky, for Appellant. Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

BERTELSMAN, District Judge. Defendant-Appellant Joseph McMullin ("McMullin") appeals the district court's denial of his motion to suppress.

Because the district court's factual findings were not clearly erroneous and it correctly found the officers' stop and frisk of McMullin to be constitutional, we **AFFIRM**.

_____

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

In reviewing the denial of a motion to suppress, this Court reviews findings of fact for clear error and conclusions of law *de novo*. *United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006) (citation omitted).

II.

On the night of May 3, 2011, Patrol Officers Kenneth Hampton and Anthony Lyons received a radio communication from a police dispatcher that there had been a report of an ongoing B & E, or breaking-and-entering, at an occupied dwelling located at 16572 Rockdale Court, Detroit, Michigan. The caller reporting the B & E, Ms. Dejuana Mays ("Mays"), advised that she was home and three people were attempting to break through her front window.

The officers arrived at the Rockdale location no more than ten minutes after receiving the radio communication. Per their standard procedure, the officers parked their marked cruiser a few houses away from the subject location and approached the house on foot. While approaching the house, the officers noticed McMullin standing close to the front of the caller's home. At that point, McMullin began walking away from the house in the general direction of the officers.

Officer Hampton testified that he advised McMullin to stop and show his hands. McMullin placed a beer he was carrying on the ground, complied with Officer Hampton's request, and advised the officers that he was "here for [his] people." Concerned for their safety and believing that McMullin might be a suspect in the breaking and entering, the officers immediately frisked McMullin to ensure that he did not have any weapons.

Both Mays and Michael Taylor ("Taylor"), Mays' boyfriend, testified that they attempted to advise the officers prior to the search that McMullin was not the perpetrator. However, Officer Hampton testified that he had no contact with Mays or Taylor prior to searching McMullin. During this search, Officer Hampton felt the handle of a gun in the front of McMullin's waistband and recovered a .38 caliber revolver.

When McMullin admitted that he did not have a permit for the firearm, Officer Hampton placed him under arrest. Officer Lyons then approached the home to speak with the residents.

Officer Lyons learned that McMullin was not involved in the reported breaking-and-entering and that Mays believed it was her landlord who had attempted to enter the home. In fact, Mays testified during the suppression hearing that McMullin had been at her home that day, but he had left to go to the store prior to the reported breaking-and-entering. Mays also testified that Taylor arrived at her home about one or two minutes after the 911 call. Further, Mays testified that when McMullin returned to her home, he began knocking at the door, but Mays did not answer because she believed it was one of the people who had just attempted to break into her home.

Ultimately, McMullin was not charged with breaking-and-entering, but he was charged with being a felon in possession of a firearm, pursuant to 28 U.S.C. § 922(g)(1).

McMullin filed a motion to suppress evidence of the firearm that the officers had recovered from his waistband. After an evidentiary hearing, the district court denied McMullin's motion. McMullin then conditionally pleaded guilty to the felon-in-possession charge, reserving his right to appeal the denial of his motion to suppress. After sentencing, McMullin timely appealed.

III.

On appeal, McMullin asserts that the issue to be determined by this Court is, "Whether police officers had a reasonable suspicion of criminal activity to justify a 'stop and frisk' of [McMullin]." *See* Appellant's Brief at p. 5. McMullin argues, "[t]he Police Officers did not have a reasonable, articulable suspicion of criminal activity to justify a 'stop and frisk.'" *Id*. at p. 10.

While McMullin's appellate counsel discusses the constitutionality of the "frisk" in a perfunctory manner in his brief, this Court finds that the particularized facts provided in this case allow the Court to analyze the constitutionality of the "frisk" as well as the "stop." As we establish below, the specific circumstances presented to the

officers upon their arrival to the scene of the reported breaking-and-entering provided the reasonable suspicion necessary to justify both stopping and frisking McMullin. Accordingly, McMullin's counsel's failure to clearly distinguish between the constitutionality of the stop and the constitutionality of the frisk will not prohibit this Court from analyzing the "frisk" issue presented. *See, e.g.*, *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 673 (6th Cir. 2008) (holding that plaintiff did not waive argument as to claims under Tennessee Human Rights Act ("THRA") despite failing to make THRA arguments in briefs because plaintiff raised arguments for Title VII and analysis of claims is the same under THRA and Title VII); *see also United States v. Goforth*, 465 F.3d 730, 737 (6th Cir. 2006) ("[W]here an argument advanced in an appellant's opening brief applies to and essentially subsumes an alternative basis for affirmance not separately argued therein, the appellant does not waive that alternative basis for affirmance.") (citation omited).

## IV.

> In a pathmarking decision, *Terry v. Ohio,* 392 U.S. 1 (1968), the Court considered whether an investigatory stop (temporary detention) and frisk (patdown for weapons) may be conducted without violating the Fourth Amendment's ban on unreasonable searches and seizures. The Court upheld 'stop and frisk' as constitutionally permissible if two conditions are met. First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter, *Terry* determined, when the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous.

*Arizona v. Johnson*, 555 U.S. 323, 326–27 (2009).

Although *Terry* clearly establishes that an officer's reasonable suspicion required to justify a stop of a suspect is different from that required to justify a frisk of a suspect, there are circumstances where an officer's reasonable suspicion will justify both stopping and frisking the suspect. In fact, *Terry* involved just that situation.

In *Terry*, an officer observed three individuals pace alternatively along an identical route in front of a store window nearly 24 times and immediately conference with each other after each time completing the route. 392 U.S. at 23. After approaching the individuals, identifying himself as a police officer, and asking the individuals their names, the officer conducted a pat down search for weapons. *Id*. at 28. The Court found that the officer had a reasonable belief "that these men were contemplating a daylight robbery—which, it is reasonable to assume, would be likely to involve the use of weapons—and nothing in their conduct [during the encounter] gave [the officer] sufficient reason to negate that hypothesis." *Id*. Accordingly, the Court held that the officer was justified in conducting a pat down search of the individuals. *Id*.

While this circuit has not specifically found that reasonable suspicion of breaking-and-entering or burglary[1] raises sufficient suspicion that the suspect may be armed and dangerous, we have found that a reasonable suspicion of other crimes can be sufficient for the officer to conduct a frisk of the suspect. *See United States v. Young*, 277 F. App'x 587, 589–90 (6th Cir. 2008) (finding the officer's reasonable suspicion that the suspect was attempting to sell drugs sufficient to justify the frisk of the suspect); *United States v. Heath*, 259 F.3d 522, 528 (6th Cir. 2001) (finding it reasonable for officers to draw their weapons, order the suspect out of his car, and frisk the suspect based upon the officers' reasonable suspicion that the suspect was engaged in drug trafficking); *United States v. Bradley*, Nos. 89–6299, 89–6530, 1990 WL 124205, at *2 (6th Cir. Aug. 27, 1990) ("It was reasonable for the officer to believe that appellant, who was suspected of having recently been involved in a car theft, might have been armed and dangerous.").

Further, a number of our sister circuits have found a reasonable suspicion of burglary sufficient to justify a frisk of the suspect. *See United States v. Snow*, 656 F.3d

---

[1]Under Michigan law, an individual is guilty of breaking-and-entering if that individual "breaks and enters, with intent to commit a felony or a larceny therein, a tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat, ship, shipping container, or railroad car." MICH. COMP. LAWS ANN. § 750.110 (West). The Supreme Court has defined common-law burglary as the breaking and entering of a dwelling at night, with intent to commit a felony. *See Taylor v. United States*, 495 U.S. 575, 592 (1990). Here, late in the evening, the officers were notified that individuals were attempting to break through a window to gain access to an occupied home.

498, 503 (7th Cir. 2011) ("[B]ecause burglary is the type of offense that likely involves a weapon, [the officer's] decision to order Snow out of the truck for purposes of a protective frisk was reasonable despite the absence of additional facts suggesting that Snow in particular might be armed."); *United States v. Vickers*, 540 F.3d 356, 362 (5th Cir. 2008) (finding that the frisk of a burglary suspect was valid where an officer responding to an emergency call found the suspect near the scene of the burglary, the suspect fit the description of the caller, and the officer's experience indicated to him that burglary suspects are often armed); *United States v. Bullock*, 510 F.3d 342, 346 (D.C. Cir. 2007) (stating that "it logically and necessarily follows that the officer may reasonably conclude the suspect may be armed and presently dangerous" when the officer possesses a reasonable suspicion that the suspect committed a crime such as burglary); *United States v. Walker,* 924 F.2d 1, 4 (1st Cir. 1991) (finding that the officer was justified in conducting a frisk where the officer reasonably suspected that the suspects were committing a burglary and the suspects engaged in evasive conduct); *United States v. Moore,* 817 F.2d 1105, 1108 (4th Cir. 1987) (finding the officer's frisk to be valid because "[t]he hour was late, the street was dark, the officer was alone, and the suspected crime was as burglary, a felony that often involves the use of weapons").

Turning to the particular facts of this case, late in the evening, the officers responded to a reported breaking-and-entering at a residence to find McMullin standing in front of the same window that had reportedly attempted to be broken into only a few minutes prior. Based on the totality of the circumstances, the officers had a particularized and objective basis for suspecting McMullin of the reported criminal activity. *See Hoover v. Walsh*, 682 F.3d 481, 494 (6th Cir. 2012) (stating that a *Terry* stop requires "a particularized and objective basis for suspecting the particular person . . . of criminal activity based on specific and articulable facts" and measured by looking at the totality of the circumstances) (citation omitted).

When the officers approached McMullin, he began to walk away from the window and in the direction of the officers. The officers asked McMullin to stop and

almost immediately frisked him because, in their experience, burglary suspects are often armed and dangerous.

Of course, as *Terry* recognizes, an officer can be presented with circumstances during his initial encounter with a suspect that dispel the officer's reasonable fear for his own or others' safety, negating the officer's ability to lawfully frisk the suspect. 392 U.S. at 30. However, this case does not present such circumstances. McMullin's ambiguous statement that he was "here for [his] people"—in light of the other circumstances presented—is not the type of fact that would dispel the officers' reasonable fear for their own or others' safety. Additionally, despite the house's occupants testifying that they yelled that McMullin was "not the guy," the occupants also testified that the encounter between McMullin and the officers happened within "a matter of seconds," and the officers testified that they had no contact with the home's occupants prior to the pat down search. *See United States v. Johnson*, 656 F.3d 375, 377 (6 th Cir. 2011) ("When reviewing the denial of a motion to suppress, . . . [w]e construe the evidence in the light most favorable to the government.") (citation omitted).

Accordingly, we conclude that the officers' reasonable suspicion that McMullin was involved in the crime reportedly afoot—without the development of other circumstances sufficient to dispel the officers' reasonable suspicion—justified their stop and frisk of McMullin.[2]

V.

For the foregoing reasons, we **AFFIRM**.

---

[2] Reasonable suspicion can be based on information from a third party, such as a 911 call, so long as that information has sufficient indicia of reliability. *See, e.g., Florida v. J.L.*, 529 U.S. 266, 271–72 (2009); *United States v. Johnson*, 620 F.3d 685, 693–94 (6th Cir. 2010). Here, the district court did not err in finding the 911 call sufficiently reliable. Accordingly, the fact that the officers did not witness the actual attempted breaking-and-entering does not diminish their reasonable suspicion.