NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0260n.06

No. 23-5994

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| | ) | **FILED** |
| UNITED STATES OF AMERICA, | ) | Jun 12, 2024 |
| Plaintiff-Appellee | ) | KELLY L. STEPHENS, Clerk |

UNITED STATES OF AMERICA,

    Plaintiff-Appellee

        v.

JAVARIUS MANN,

    Defendant-Appellant

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

OPINION

Before: WHITE, STRANCH, and MURPHY, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** After stopping defendant-appellant Javarius Mann's vehicle, officers frisked him and searched his pockets, finding a firearm and narcotics. Mann filed a motion to suppress, arguing that the officers violated his Fourth Amendment rights. The district court denied the motion, and Mann now appeals. We AFFIRM.

**I.**

**A.**

In the evening of January 4, 2021, Dyersburg police officers Alex McCommon and Sharquawn Henderson were on patrol and noticed Mann's vehicle. It was shortly after 5:00 p.m. Although the vehicle had its headlights on, the license plate was not illuminated, in violation of Tennessee state law, and the officers were unable to read it.[1] The officers pulled Mann over, and

---

[1] Tennessee law requires vehicles to have the license plate illuminated "at all times that headlights are illuminated." Tenn. Code Ann. § 55-4-110(c)(1). Mann challenged the initial stop in the district court, arguing that under a different provision, § 55-9-406(a), his headlights were not required to be illuminated given the time and the natural light, so it was not illegal for his license plate to be unilluminated. The district court rejected that argument, finding that the failure

McCommon exited the patrol car and approached the passenger side of Mann's vehicle. He asked Mann if he had any weapons in the car, and Mann denied having weapons.

Henderson then approached Mann on the driver's side and began questioning him. He asked Mann if he had anything illegal in the car. In response, Mann took his hand off the steering wheel and appeared to move it towards the center of the car. Henderson warned Mann not to reach for anything. Henderson then told Mann that if Mann was honest with him, he had "options." In response, Mann said "I don't got no options" and dropped his hand, appearing again to reach for something. Henderson testified that he interpreted Mann's statement to suggest that Mann believed there was no way out of the situation, and worried that Mann may "have negative intentions" such as "attacking an officer, going for a weapon," or shooting himself. R.39, PageID 110.

The officers ordered Mann to exit the vehicle, and Henderson ordered him to place his hands on the roof of the vehicle. After Mann complied, Henderson frisked the outside of Mann's clothing and asked Mann, "Do you mind if I go in your pockets?" Mann said, "No, sir." Henderson continued with the pat down and felt a firearm near the left side of Mann's stomach. Henderson then handcuffed Mann's hands behind his back and questioned him about the firearm. After warning Mann that he was going to reach for the firearm, Henderson removed the firearm from Mann's pocket. McCommon then discovered a purple bag sticking out of Mann's vest pocket that

---

to illuminate the license plate when the vehicle's headlights were on violated Tennessee law and thus the officers had probable cause to stop Mann. Before briefing in this court began, the Tennessee Court of Criminal Appeals ruled in an unrelated case that failure to illuminate a vehicle's license plate when its headlights were on was a violation of Tennessee law. *State v. Moss*, No. E202201227CCAR3CD, 2023 WL 5702902 (Tenn. Crim. App. Sept. 5, 2023). In light of that ruling, Mann no longer challenges the validity of the initial stop.

contained cash and several bags of narcotics. The officers later learned that Mann had prior convictions for aggravated burglary and two robberies.

**B.**

A grand jury indicted Mann on charges of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); using, carrying, and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a) and (e); and two forfeiture counts. Mann filed a motion to suppress any evidence obtained as a result of the stop and search, arguing that the initial stop was illegal and that the officers lacked probable cause or consent to frisk or search him. The district court denied the motion following a hearing at which Henderson and McCommon testified. Pursuant to a plea agreement preserving Mann's right to pursue this appeal, the charges were dropped, and Mann pleaded guilty to a separate information charging him with possession of a stolen firearm in violation of § 922(j). He was sentenced to 120 months' incarceration.

Mann now appeals the denial of his motion to suppress.

**II.**

Mann argues that because the officers lacked reasonable suspicion that Mann was armed and dangerous they had no reasonable basis to frisk him. He also challenges the search of his pockets, arguing that he did not give valid consent for the search.

**A.**

On appeal from a ruling on a motion to suppress, we review factual findings for clear error and legal conclusions de novo. *United States v. Perez*, 440 F.3d 363, 365–66 (6th Cir. 2006). We consider the evidence in the light most likely to support the district court's decision. *United States*

*v. Smith*, 263 F.3d 571, 581 (6th Cir. 2001). The district court's determination of reasonable suspicion is reviewed de novo. *Id.* at 589. Whether consent was given freely and voluntarily is "a question of fact to be determined from the totality of all the circumstances," and our review is for clear error. *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)).

**B.**

An officer may conduct a stop and frisk without violating the Fourth Amendment if there is a proper basis for the stop and if the officer has a reasonable suspicion that the person is armed and dangerous. *Bennett v. City of Eastpointe*, 410 F.3d 810, 822 (6th Cir. 2005). "Reasonable suspicion is based on the totality of the circumstances." *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016) (citation omitted). To justify a frisk, the officer "must articulate specific facts that would warrant 'a reasonably prudent man in the circumstances . . . in the belief that his safety or that of others was in danger.'" *Bennett*, 410 F.3d at 822 (alteration in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Mann no longer challenges the validity of the traffic stop. He argues only that the officers lacked reasonable suspicion to pat him down.

The government points to two circumstances in particular that it believes gave Henderson reasonable suspicion to execute the pat down. First, the government focuses on Mann's movements in response to Henderson's questioning about illegal items in the car. Henderson testified that Mann was "looking away in a different direction from him," and "began reaching towards either the side compartment or maybe the glove box to the right of his body." R.39, PageID 110. Mann continued looking away and reaching to the right even after Henderson ordered him to stop.

Second, the government points to Mann's comment to Henderson—that Mann did not have any "options"—made while Mann looked away and started to reach to the right. Henderson testified that he believed this statement showed Mann's "negative intentions," such as "attacking an officer, going for a weapon or using it on theirself." R.39, PageID 110.

We have consistently found that "furtive movement[s]" that are consistent with reaching for a weapon or attempting to hide one, in conjunction with other circumstances, can justify an officer's belief that a person may be armed and dangerous. *See, e.g.*, *United States v. Graham*, 483 F.3d 431, 439 (6th Cir. 2007); *United States v. Wilson*, 806 F. App'x 450, 455 (6th Cir. 2020) (finding reasonable suspicion based on fact "that defendant's hand went to his waistband at least twice while defendant was still in the car, and, in [the officer's] experience, the waistband was a common place to keep a weapon"). This is particularly true if—as here—the movements continue after an officer asks the person to stop. *See United States v. Tillman*, 543 F. App'x 557, 561 (6th Cir. 2013) (noting that we "give significant weight to the fact that Tillman refused to heed Delaney's instruction to keep his hands on the steering wheel"); *United States v. Coker*, 648 F. App'x 541, 545 (6th Cir. 2016) (upholding legality of frisk when defendant "would (still) not stop digging around despite McCullough's repeated admonitions to stop," as he "could have grabbed his gun during any of this digging"). And notably, Mann's movements seem to have been precipitated by questioning about illegal items in the car.

Mann attempts to distinguish these cases, focusing on the factual differences between the interactions. But this case, like the others, involves multiple circumstances that could cause reasonable officers to believe that Mann was armed and might be considering using his weapon: Mann's multiple attempts to reach across the car, and his looking away, ignoring commands, and

cryptic comment that he had no options. These circumstances were sufficient to justify the protective frisk.

Mann also argues that there is an innocent explanation for his actions, and they were not as suspicious as the officers made them seem in the suppression hearing—arguing, for example, that Mann failed to make eye contact because of the bright flashlight. But even so, the officers' interpretation of those movements as consistent with dangerous intentions was not unreasonable, and the fact that there may have been another reasonable interpretation does not undermine their impressions in the moment. *See Coker*, 648 F. App'x at 545 ("Those closer to the stop, *witnessing* the events rather than reading about them on a computer screen, have already determined the facts."(emphasis omitted)).

In sum, based on the totality of the circumstances, the district court did not err in concluding that Mann's actions would cause reasonable officers to fear for their safety, and thus the pat down did not violate the Fourth Amendment.

## C.

Immediately after Henderson began frisking Mann, he asked Mann if he minded if Henderson went in his pockets, and Mann said "no." R.39, PageID 133. Henderson continued with the pat down, then reached into Mann's front left pants pocket and recovered a firearm. McCommon later recovered a bag from Mann's vest pocket containing cash and methamphetamines. Mann argues that his consent was not freely and voluntarily given, and so even if the initial frisk was legal, any search of his pockets was not. We disagree.

Mann concedes that he stated his consent to the officers' search of his pockets, but argues that he merely "acquiesced in the face of a show of authority," and accordingly, his consent was not voluntarily and freely given. Appellant Br. at 31–35.

Searches conducted with an individual's consent do not violate the Fourth Amendment, so long as the consent was "unequivocally, specifically, and intelligently given, uncontaminated by any duress and coercion." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (quoting *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992)). In evaluating the validity of an alleged consent, we look at "the totality of the circumstances," and consider "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Blomquist*, 976 F.3d 755, 759 (6th Cir. 2020) (quoting *United States v. Elkins*, 300 F.3d 380, 647 (6th Cir. 2002)).

Our review of the record reveals no reason for us to reject the district court's conclusion that Mann's age, intelligence, and education do not support a finding that his consent was involuntarily given. As for the second factor, the officers did not inform Mann that he had a right to refuse consent, but "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent." *Bustamonte*, 412 U.S. at 227. And we have noted that individuals who have prior interactions with the criminal justice system—like Mann—are more likely to understand their right to refuse consent. *See, e.g.*, *United States v. Canipe*, 569 F.3d 597, 604 (6th Cir. 2009).

The length and nature of the detention favors finding that consent was voluntarily given: officers had been in conversation with Mann for just a few minutes, and the conversation had been largely cordial. Mann had stepped out of the car just a few seconds before Henderson asked for his consent. And although McCommon had his weapon drawn at one point, he had holstered it by the time Henderson asked for Mann's consent.

As for the police conduct, Mann emphasizes that Henderson had ordered Mann to put his hands on the roof of the vehicle and had already begun frisking him when Mann's consent was requested. And it is true that, in at least one circumstance, we found the fact that consent was given "immediately after [an officer] had placed his hands on [an individual's] body to conduct [a] frisk" suggests consent was not freely given, because "[a] scared, defenseless man is not in a position to say no to a police officer whose hands are still on or just removed from his body." *United States v. Beauchamp*, 659 F.3d 560, 572 (6th Cir. 2011).

But *Beauchamp* did not create a per se rule that consent given while being frisked or detained is necessarily given under duress. *See, e.g.*, *United States v. Perry*, 703 F.3d 906, 909 (6th Cir. 2013) (abrogated on other grounds) (rejecting the argument that consent to search was involuntary because defendant was handcuffed); *Gale v. O'Donohue*, 824 F. App'x 304, 319 & n.9 (6th Cir. 2020) (distinguishing *Beauchamp* and collecting cases that show "consent given during a valid *Terry* stop, physical seizure, or arrest will not necessarily defeat the voluntariness of consent"). And the circumstances in *Beauchamp* were notably different. The officers in *Beauchamp* were on patrol at 2:30 a.m. and had approached Beauchamp twice already that night by the time they frisked and searched him; after being approached before, Beauchamp had "hurriedly walk away without making eye contact." *Beauchamp*, 659 F.3d at 564. We noted that those prior interactions likely made Beauchamp perceive "the officers were targeting him." *Id.* at 566. And the officers noticed while frisking him—prior to Beauchamp's verbal consent to be searched—that Beauchamp was "visibly shaking," indicating that he was nervous and felt overpowered by the officers. *Id.* at 564–65.

In contrast, the interactions between Mann and the officers took place over the span of just a few minutes. In those few minutes, Mann was cooperative and did not appear nervous.

-8-

Henderson asked if Mann minded if he searched his pockets; Mann said he did not. Nothing Mann said suggested he was merely acquiescing or "conveying an expression of futility in resistance to authority." *Worley*, 193 F.3d at 386 (finding district court did not clearly err in finding consent was involuntary when defendant said only, "You've got the badge, I guess you can"). And in *Beauchamp*, the district court had not considered whether the defendant's consent was given voluntarily, so we reviewed the issue de novo; here, we review the district court's finding that Mann voluntarily consented for clear error.

Absent something more, the fact that Henderson had already begun to frisk Mann when Mann consented to the search of his pockets is insufficient to compel a conclusion that Mann's verbal consent was not given voluntarily and freely. Accordingly, the district court did not clearly err in finding that the officers' search of Mann's pockets was lawful.

**III.**

For the reasons stated, we AFFIRM the denial of Mann's motion to suppress.